**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

In the Matter Of:                                   Case No.: 9-12-mp-00002-BSS
**THE DELLUTRI LAW GROUP,**
                                                    **Miscellaneous Proceeding**

_____/

**DONALD F. WALTON
UNITED STATES TRUSTEE FOR REGION 21,**

                    **Movant,**
**v.**

**THE DELLUTRI LAW GROUP,**

                    **Respondent.**

_____/

**MEMORANDUM OPINION and ORDER**

On July 11, 2012, this Court conducted its hearing in this miscellaneous proceeding to consider the United States Trustee's Omnibus Motion For Examination Of Services Rendered And Fees Paid To The Dellutri Law Group And Motion To Compel The Filing Of Supplemental Disclosure Of Attorney Compensation, Fees And Expenses In Pre-Confirmed Chapter 13 Cases. (The "Omnibus Motion" (D.E. 1)).  Trial Attorney J. Steven Wilkes appeared on behalf of the United States Trustee for Region 21, and The Dellutri Law Group's (the "Firm") principal, Carmen Dellutri, and the Firm's counsel, Carlos L. de Zayas, appeared for the Firm.  The parties addressed the Court at the July 11, 2012 hearing on the Omnibus Motion, and the Court took the matter under advisement.

The issues presented in this miscellaneous proceeding concern whether the Firm violated either the no-look, soup-to-nuts presumptive compensation order, (the "No-Look Order"),

currently governing Chapter 13 compensation, or the order establishing duties entered in each Chapter 13 case, (the "First Day Order"), in the Fort Myers Division of the Court by seeking and/or collecting: (1) undisclosed compensation; (2) undisclosed costs; and (3) fees or expenses in excess of those permitted to be charged to Chapter 13 debtors by the No-Look Order.[1] Therefore, the issues raised in this miscellaneous proceeding arise from the confluence of three matters, the Court's No-Look Order, the Court's First Day Order, and the compensation of fees and expenses of the Firm in its Chapter 13 cases.

The portion of this Court's No-Look Order that applies in  this miscellaneous proceeding states that:

> [A]ll services rendered by the debtor's attorney and expenses incurred in connection therewith, except the expenses noted below in this paragraph, from the beginning of the representation through 36 or 60 (whichever the total length of the plan is) months after the date of the order confirming plan shall be fully compensated by the base Presumptively Reasonable Fee.  An attorney may collect an additional pre-petition amount for the following expenses:  the statutory filing fee and any fee charged by a third-party provider for credit counseling and the education course required by BAPCPA.

*See* No-Look Order, Admin Order FTM-2010-1, pp. 2-3, para. 4.

Additionally, though not as directly applicable in this case, the No-Look Order also provides that:

> After the petition is filed, a debtor's attorney may not request cash or in any way condition providing any services to the debtor on a cash payment for any post-petition services…  Payment of the fees for such services shall be limited to the allowance of an administrative expense…

---

[1] The United States Trustee also raised allegations of seeking and receiving post-petition compensation without Court approval and contrary to the No-Look and First Day Orders for amendments to plans or schedules. The Firm did seek and collect post-petition compensation in three (3) cases for plan amendments.  The Firm has already refunded those impermissible fees to the chapter 13 debtors.  In light of that and the Court's opinion of *In re Whitcomb*, -- B.R. --, 2012 WL 4092519 (Bankr. M.D. Fla., Sept. 18, 2012), the United States Trustee is no longer raising this issue in this miscellaneous proceeding.

*See* Id., at pg. 3, para. 6.  The No-Look Order will be discussed in more detail below.

The applicable provision of this Court's First Day Order in this miscellaneous proceeding is:

> <u>Attorney's Fees</u>.  Consistent with Rule 2016(b), the Debtor's attorney must file supplemental disclosures for all payments received from the Debtor after this case is filed.  Failure to file the required disclosures may result in the disgorgement of fees paid.  Pursuant to Rule 2016(b), a pre-petition retainer paid to counsel for the Debtor, whether received from the Debtor or other person for the benefit of the Debtor, must be disclosed in writing to the Court and to the Trustee. . . .

*See* First Day Order, *e.g., In re Williams*, 9:11-bk-05085-BSS, Doc. No. 10, pg. 5, para. 12, entered April 4, 2011.  This Court enters a First Day Order, in substantially similar format, in every Chapter 13 case.

The parties presented this Court with stipulated facts and proposed conclusions of law.  This Court now renders its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable by Federal Rule of Bankruptcy Procedure (Fed. R. Bankr. P.) 7052.

The Firm has expressly consented to jurisdiction by the Court for the entry of final orders and judgments by this Bankruptcy Court and has further waived any appeal from these proceedings.

### *Stipulated Findings of Fact*

The Firm is a law firm of 2 – 8 attorneys whose managing partner is Carmen Dellutri.  Mr. Dellutri is certified in consumer bankruptcy by the American Board of Certification.  Each one of the Firm's attorneys is duly admitted to practice in the United States District and Bankruptcy Courts for the Middle District of Florida.  For over twelve years, the Firm, through

its attorneys, has actively provided bankruptcy representation services to its clients in cases commenced under Chapters 7, 11, and 13.

This miscellaneous proceeding encompasses all Chapter 13 cases commenced by the Firm on behalf of its debtor-clients during the time period of January 2007 through May 2012 (the "Cases"). During that time period, the Firm commenced approximately 2,259 Chapter 13 cases, an overall average filing of 35 Chapter 13 cases per month.[2] In the Cases, the Firm filed disclosures of attorney compensation statements. Additionally, the debtors filed Statements of Financial Affairs and Chapter 13 plans in the Cases. These filings all constitute judicial admissions in accordance with Fed. R. Bankr. P. 1008, 2016; 11 U.S.C. §§ 329, 521; and 28 U.S.C. § 1746.

Prior to the United States Trustee's commencement of this miscellaneous proceeding, the Firm approached and reported the underlying issues to the Office of the United States Trustee. At that time, although the United States Trustee was investigating the matters that are the subject of this miscellaneous proceeding, the Firm was without knowledge of the Office of the United States Trustee's ongoing investigation. After the commencement of this miscellaneous proceeding, the Firm prepared a thorough, complete, and exhaustive self-audit report.[3] Together, these form the evidentiary basis for the Court's stipulated findings of fact.

---

[2] This miscellaneous proceeding does not directly address any of the Firm's filings commencing cases originally under chapters 7 or 11. However, Mr. Dellutri has conducted the same self-audit and will comply on a going forward basis in Chapter 7 and 11 cases as well as in Chapter 13 cases.

[3] At the preliminary status conference, the parties agreed that the Firm would conduct a thorough and complete self-audit of all compensation and costs paid by, for, or on behalf of Chapter 13 debtors to the Firm, beginning in 2007 through the present time, and report such audit results to the United States Trustee. The Firm has completed that self-audit and the United States Trustee has had an opportunity to analyze the data. The parties and the Court are satisfied that formal discovery beyond the Firm's exhaustive self-audit report is not necessary to fully resolve the issues in this miscellaneous proceeding.

The United States Trustee asserts through his Omnibus Motion and memorandum in support thereof that the Firm has "failed to fully and completely disclose payments of all fees and expenses," by having "failed to fully and accurately disclose all pre-petition payments as well as failed to provide supplemental disclosure of all post-petition request[s] for compensation made directly to the debtor and receipt of payment thereof."

The Firm's self-audit established that between mid-2008 and mid-2011 there were expenses collected from clients that were not fully and completely disclosed or authorized. Beginning in mid-May of 2008, the Firm began charging Chapter 13 debtors an additional pre-petition expense named a "miscellaneous fee" in the amount of $50 per individual case and $100 per joint case. This miscellaneous fee was collected from the debtors in order to recover recurring office overhead costs attributable to each file. The Firm increased the miscellaneous fee charge to $75 for individual cases and $150 for joint cases beginning in late July 2009.[4] In August of 2011, the Firm stopped its practice of collecting a miscellaneous fee charge.[5]

The miscellaneous fee charges collected pre-petition by the Firm, although relatively small on a per-case basis, totaled $149,040.00 over the time period.[6] In some cases, the addition of these office costs combined with the attorney's fee charged were in excess of those allowed by the No-Look Order. Further, these costs were not disclosed by the Firm's office in any filing with the Court.

---

[4] The Firm's position is that, because of the additional costs required to comply with the BAPCPA amendments, it was faced with a decision to either lower the fees for legal services (and consequently, the value of the services received) or seek reimbursement of the costs associated with what it deemed to be proper representation of its client. In the Firm's opinion, as a matter of policy, this is not a choice that Congress intended when BAPCPA was enacted, and may result in cost-saving measures that could adversely impact the value of services received.

[5] The Firm did reserve its argument that the costs were reasonable and necessary, and thus not inappropriate pursuant to its plain language interpretation of the Bankruptcy Code.

[6] The miscellaneous costs charged for all of 2012 totaled only $1,125.00. The Firm points out that the only reason any miscellaneous costs were charged in 2012 was because the Debtors had retained the firm prior to August 2011, when the costs were being charged.

### *Legal Analysis*

Section 329(a) of Title 11 of the United States Code (the "Bankruptcy Code"), places an affirmative duty on debtors' counsel to fully and completely disclose *all fee arrangements and all payments*, beginning one year before the date of the filing of the bankruptcy petition.  Section 329(a) provides, in pertinent part:

> (a)  Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
>
> (b)

11 U.S.C. § 329(a).  Further, pursuant to Fed. R. Bankr. P. 2016(b), any payment to a debtor's attorney for fees or costs must be disclosed:

> (c)  **Disclosure of compensation paid or promised to attorney for debtor** Every attorney for a debtor, *whether or not the attorney applies for compensation*, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code, including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required.  **A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.**

Fed. R. Bankr. P. 2016(b) (emphasis added).

> *A.   Required Disclosure of All Fees and Expenses:  Time Period and Scope*
> *Compensation Must Be Disclosed From One Year Prior to Petition to Closure of Case*

Courts have uniformly interpreted Section 329(a) and Fed. R. Bankr. P. 2016(b) to require the attorney's full and complete disclosure of any payment made by, for, or on behalf of

a debtor as well as any agreement relating to compensation.  *See Brake v. Tavormina (In re Beverly Mfg. Corp.*), 841 F.2d 365, 369-70 (11th Cir. 1988); *In re Becker*, 469 B.R. 121 124-25 (Bankr. M.D. Fla. 2012)("Debtor's attorneys are required to disclose all payments received from, or promised by, their debtor clients, automatically and without reminding."); *In re Whaley*, 282 B.R. 38, 41-42 (Bankr. M.D. Fla. 2002); *In re Century Plaza Associates,* 154 B.R. 349, 352 (Bankr. S.D. Fla. 1992) (Section 329(a) and Fed. R. Bankr. P. 2016(b) "vests the Bankruptcy Court with the authority to review all professional fees paid to the debtor's attorney.").  This disclosure mandate arises beginning one year pre-petition and is a continuing disclosure requirement while the bankruptcy case remains pending.  *See* Fed. R. Bankr. P. 2016(b)(last sentence); *see also* Fed. R. Bankr. P. 2017(b).  This is due to Congress' concern that such transactions with attorney may present "serious potential for evasion of creditor protection provisions of the bankruptcy laws," and a "serious potential for overreaching by the debtor's attorney," and therefore such transactions are subjected to "careful scrutiny."  *See* H.R. Rep. No. 95-595, at 329 (1977), *reprinted* 1978 U.S.C.C.A.N. 5963, 6285.

The intent and responsibilities evidenced by these provisions are incorporated into the Court's No-Look Order and First Day Order.  These provisions protect the integrity of the bankruptcy system.  The Court's No-Look Order does not absolve debtor's counsel from providing complete and accurate disclosures.  "The disclosure system functions properly only when debtors' attorneys automatically and voluntarily, without prompting from the Court or a party in interest, disclose all payments received."  *In re Hackney*, 347 B.R. 432, 442 (Bankr. M.D. Fla. 2006).  Likewise, the Court's statutory obligation to review attorney compensation is not alleviated by entry of the No-Look Order.  An attorney is required to "lay bare all of [his]

dealings" concerning compensation so that the court and parties are not forced to "ferret out pertinent information." *In re Saturley*, 131 B.R. 509, 517 (Bankr. D. Me. 1991); *see also, Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 881 9th Cir. 1995); *Jensen v. U.S. Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 848-89 (10th Cir. BAP 1997); *In re Gay*, 390, B.R. 562, 574 (Bankr. D. Md. 2008)(*citing In re Park-Helena Corp.*, 63 F.3d 877, 881 (9th Cir. 1995)).. "Coy or incomplete disclosures" are "less than the full measure of disclosure" required under the Bankruptcy Code and Rules, even if they arise merely by way of negligence or inadvertence. *Saturley*, 131 B.R. at 517; *In re McTyeire*, 357 B.R. 898, 904 (Bankr. M.D. Ga. 2006).

### B.  All Compensation, Including Fees and Expenses, In Addition to All Compensation Agreements, Must Be Disclosed

Parties may argue that the disclosure requirements under § 329 and Rule 2016(b) only speak to the disclosure of compensation of attorney services, and do not require the disclosure of reimbursement of expenses.  That argument is without merit.  First, §329 and Rules 2016(b) and 2017 require the disclosure of any agreement between the debtor and an attorney.  Any fee agreement necessarily must address both compensation of attorney services as well as reimbursement of expenses.  *See* R. Reg. Fla. Bar 4-1.5 – Fees and Costs for Legal Services. This is further codified under Bankruptcy Code §§ 526-28 dealing with Assisted Persons in bankruptcy.  *See also* 11 U.S.C. § 101(3).  These requirements mandate that there shall be a fully executed written fee agreement, and that the terms and provisions of that fee agreement be fully and completely disclosed.

Second, § 329(a) provides what transactions between a debtor and an attorney must be disclosed.  Those transactions are reviewable by the court through the magnifying lenses of § 330(a)(1), which in turn provides:

> **(a)(1)** After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103--
>
>> **(A)** reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
>>
>> **(B) reimbursement for actual, necessary expenses.**

11 U.S.C. § 330 (emphasis added).  Without full and complete disclosure of the fee agreement, including agreements and payment regarding expenses, debtor's counsel would impermissibly force the court and parties to "ferret out pertinent information."  *Saturley*, 131 B.R. at 517.

Third, an attorney can only be reimbursed for actual and necessary expenses expended by the attorney on behalf of a debtor.  Reimbursement of actual and necessary expenses may only be charged a client at the actual costs incurred by a professional under §§ 327-331; *see also*, Comment to R. Reg. Fla. Bar, 4-1.5 ("Filing fees, transcription, and the like should be charged to the client **at the actual amount paid by the lawyer**.")(Emphasis added.)*;Matter of Connecticut Motor Lines, Inc.*, 336 F.2d 96, 108 (3rd Cir. 1964)(recognizing that filing fees are necessary expenses)..  This is because, the attorney who collects more than the actual expense charged is creating an impermissible profit center in seeking reimbursement of expenses which are neither actual nor necessary under § 330(a)(1)(B).

Fourth, the debtor's disclosure on the Statement of Financial Affairs, statement 9, requires the full and complete disclosure of all payments and transfers of property to an attorney for relief under the bankruptcy laws or for preparation of the petition in bankruptcy; not just payments for compensation of attorney services.  These disclosures are generally prepared by debtors' counsel for review and execution by the debtors under penalties of perjury.  "The purpose of the requirement of filing a Statement of Financial Affairs is to furnish the [parties] with detailed information about the debtor's financial condition, thereby saving the expense of long and protracted examination for the purpose of soliciting the information."  *Garcia v. Coombs (In re Coombs)*, 193 B.R. 557, 563 (Bankr. S.D. Cal. 1996).  Neither a debtor nor debtor's counsel is entitled to omit information or provide partial information simply because, in his view, the information provided is sufficient or the information omitted is of inconsequential value.

Finally, when a debtor's transactions with an attorney are reviewed, they are reviewed by the court under Fed. R. Bankr. P. 2017, which provides that: "If [the attorney's] compensation exceeds the reasonable value of any such services, the court may cancel any such **agreement**, or order the return of any such payment, to the extent excessive, to— . . .") (emphasis added).  Rule 2017 further provides the court with the authority to review "**any payment of money, or any transfer of property, or any agreement therefor.**").[7]  (emphasis added).  Simply stated under

---

[7]Fed. R. Bankr. P. 2017(b) provides:

"(b) Payment or transfer to attorney after order for relief

On motion by the debtor, the United States trustee, or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property, or any agreement therefor, by the debtor to an attorney after entry of an order for relief in a case under the Code is excessive, whether the payment or transfer is made or is to be made directly or indirectly, if the payment, transfer, or agreement therefor is for services in any way related to the case."

§§ 329, 526-28, Fed. R. Bankr. P. 2016(b) and 2017, it is beyond peradventure that debtors' attorneys are mandated to disclose not only all of their fees and all of their expenses but also any and all agreements, be it with the debtor, for the debtor, or on behalf of a debtor.

*C.   The No-Look Order*
*"No Look Fee," and the*
*First Day Order*

A no look fee is a flat fee, usually adopted within a district by local rule or guideline, which permits counsel in a Chapter 13 case to receive a specific fee for a defined bundle of services without the requisite necessity of:   (1) maintaining contemporaneous hourly time records; and (2) filing a fee application and giving notice under § 330 of the Bankruptcy Code and Fed.R. Bankr. P. 2002 and 2016.  Cossitt, James L., *Chapter 13 No Look Fees,* American Bankruptcy Institute, Proceedings of 28th Annual Spring Meeting, at 1121*; ee generally* Professor Price *"No Look" Attorneys' Fees and the Attorneys who are Looking: An Empirical Analysis of Presumptively Approved Attorneys' fees in Ch. 13 Bankruptcies and a Proposal for Reform,* 20 ABI Law Rev. 291 (an analysis of no-look orders conducted on a national level). The United States Bankruptcy Court, Middle District of Florida, Tampa Division, initially entered the first No-Look Order in 2007.  *See*, 8:07-mp-00002-MGW, (the "Tampa Order").[8] Attorneys in the Fort Myers Division operated under the Tampa Order until 2010.  In 2010, Judge Paskay for the Fort Myers Division of the Middle District of Florida, adopted the findings of the Tampa Order, but with slightly modified terms, and entered the No-Look Order.  *See* Admin. Order FTM-2010-1.  Subsequently, Judge Adams for the Fort Myers Division entered an Amended No-Look Order to provide for recovery of "a la carte" compensable items.  *See*

---

[8] For a more thorough history of the No-Look Order, *see Whitcomb,* -- B.R. --, 2012 WL 4092519 at pp. 7-8.

Admin. Order FTM-2010-2.[9]   The No-Look Order provides for a flat fee for compensation of services and the reimbursement of expenses associated with the filing fee, credit counseling and financial management courses.

A First Day Order is entered in every chapter 13 case in the Fort Myers Division.  The First Day Order, consistent with Fed. R. Bankr. P. 2016(b), requires disclosure of pre-petition payments, be they "from the debtor or other person for the benefit of the debtor."  Like Rule 2016(b), the First Day Order does not provide for any exceptions from compliance.

### *Conclusions*

There are three issues to resolve in this miscellaneous proceeding.  First, as highlighted through the above analysis, there is an obligation for disclosure.  This Court concludes that the "Miscellaneous Fee" expense charged by the Firm should have been disclosed by the Firm on its §329 disclosure of attorney compensation.  This provides a coherent, cohesive, and consistent disclosure of the pre-petition transactions, property transfers, and payments mandated by the Bankruptcy Code and Rules.  Only toward the end of the Firm's practice of collecting the Miscellaneous Fee were the debtors disclosing such payments on their Statements of Financial Affairs.  *See generally, In re Williams*, 9:11-bk-05085-BSS, *contra In re Watson*, 9:11-bk-14958-FMD.  This is likewise true with respect to  the Firm's § 329 disclosures.  *See generally,*

---

[9] The No Look Order, as Amended generally provides for the following:
1.      A presumptively reasonable fee of $3,000 regardless of the length of the Chapter 13 plan;
2.      A $275 - $375 fee for certain "a la carte" motions, depending on whether a hearing is required (e.g., motion to amend or modify a plan);
3.      Utilization of the lodestar method and contemporaneously kept time records as discussed in *Newman*, *supra*, only if the matter is an "extraordinary" matter;
4.      Payment procedures to attorneys following the filing of the petition;
5.      Payment procedures for payments to creditors pursuant to the Chapter 13 plan;
6.      Authority for parties in interest to seek to disgorge excessive fees; and
7.      Authority for parties, including the Chapter 13 Trustee, to object to fees despite presumptive reasonableness.
*See* No Look Order, at pp. 1-5, and Amended No Look Order, at p. 2.

*In re Williams*, 9:11-bk-05085-BSS, *contra In re Lucy*, 9:11-bk-16667-BSS.   This Court expressly rejects the proposition that the lack of space on AOC Form B203[10] is a license not to disclose expenses or agreements.   It is relatively simple to provide a coherent, cohesive, and consistent disclosure of agreements and compensation in compliance with Fed. R. Bankr. P. 2016(b) and 2017(b) that fully and accurately details these charges.

Second, expenses sought by an attorney must be not only actual but also necessary.   The Firm instituted its collection of Miscellaneous Fee charges from debtors in order to recover recurring office overhead costs attributable to each file, but it did not disclose payment or receipt of Miscellaneous Fee charges until close to the end of this practice.   "General overhead should be accounted for in a lawyer's fee, whether the lawyer charges hourly, flat, or contingent fees." *See* Comment to R. Reg. Fla. Bar 4-1.5; *see also Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*, 127 F.3d 1398 (11th Cir. 1997). "Overhead expenses" generally include: library expense, rent, utilities, secretarial/clerical expense, office supply expense, telephone expense, local commuting, and meal expenses of individual employees. *See In re Global International Airways Corp.*, 38 B.R. 440, 444 (Bankr. W.D. Mo.1984) (disallowed secretarial expense claim); *In re Rego Crescent Corp.*, 37 B.R. 1000, 1009, 1012, 1018 (Bankr. E.D.N.Y. 1984) (disallowed request for allowance of local transportation, library, secretarial and in-town meal expense); *In re Horn & Hardart Baking Co.*, 30 B.R. 938, 942 (Bankr.E.D.Pa.1983) (disallowed request for allowance of clerical, support staff expense).   These expenses have a common characteristic in that they are incurred by a firm on a day-to-day basis, no matter whom it represents.

---

[10] Form B203 is not an Official Form promulgated by the Judicial Conference under Fed. R. Bankr. P. 9009, but rather a court administrative form provided by the Administrative Office of the Courts.

The No-Look Order and First Day Order together strive to provide Chapter 13 practitioners with a streamlined administration of Chapter 13 cases and their compensation for services and reimbursement of expenses.  The No-Look Order is envisioned to provide the Chapter 13 practitioner with a total package of compensation that fairly reimburses attorneys for services and actual expenses.  A practitioner may deviate from compliance with the No-Look Order by maintaining contemporaneous time records, preparing, filing and serving fee applications, and establishing the entitlement to compensation and reimbursement at a hearing.  However, a practitioner is not free to deviate from the No-Look Order by collecting undisclosed additional fees, regardless of  what moniker is used to identify those 'fees.'

The third issue raised goes to the disclosure by debtors on their Statements of Financial Affairs.  Statement 9 requires full and complete disclosure of each and every payment made to an attorney, regardless of whether paid by or on behalf of a debtor.  Here, debtors failed to either disclose all pre-petition payments or the complete and total amount of the payments made to the Firm.  Far worse than debtors' false statement is that the Firm knew that, in fact, the amounts stated by debtors were not accurate and complete.  However, the Firm prepared the inaccurate and incomplete statements for its clients, tendered them to the clients for execution, and filed the statements with this Court.

"The purpose of the requirement of filing a Statement of Financial Affairs is to furnish the trustee and creditors with detailed information about the debtor's financial condition, thereby saving the expense of long and protracted examination for the purpose of soliciting the information."  *See Garcia v. Coombs (In re Coombs)*, 193 B.R. 557, 563 (Bankr. S.D. Cal. 1996).  This requires full and complete disclosure of the precise nature of all of a debtor's assets,

liabilities, and financial affairs prior to and surrounding the commencement of the case.  Neither

a debtor nor debtor's counsel is entitled to omit information or provide partial incomplete

information simply because, in his view, the information provided is sufficient to allow the

trustee to determine the value of a debtor's estate or the debtor's financial affairs.  The Firm's

failure to ensure that its clients fully and accurately disclose their relationships, agreements,

arrangements, payments, and dealings with bankruptcy counsel brings into strong question the

veracity of debtors' entire schedules and statements.

### A. *Disgorgement, Civil Penalties, and Sanctions*

This Court addresses the sanctions for the Firm's actions over the last five years in its

Chapter 13 cases.  An attorney's disclosures under §§ 327(a) and 329(a) are "central to the

integrity of the bankruptcy process," and the failure to disclose is sanctionable.  *In re Andreas*,

373 B.R. 864, 872 (Bankr. N.D. Ill. 2007).  An attorney who fails to comply with the

requirements of § 329(a) and Rule 2016(b) is subject to "forfeiture of 'any right to receive

compensation for services rendered on behalf of the debtor,' and the disgorgement of any funds

already paid by the debtor.  *McTyeire*, 357 B.R. at 904, *quoting In re Woodward*, 229 B.R. 468,

473 (Bankr. N.D. Okla. 1999); *see also Henderson v. Kisseberth (In re Kisseberth)*, 273 F.3d 714, 721

(6th Cir. 2001); *Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1045 (9th Cir. 1997), *Investment Bankers*,

4 F.3d at 1565; and *In re Fricker*, 131 B.R. 932, 938-39 (Bankr. E.D. Pa. 1991).  "The sanctions can

include partial or total denial of compensation as well as partial or total disgorgement of fees

paid.   'Many courts, perhaps the majority, punish defective disclosure by denying all

compensation.'"  *Mapother v. Mapother, P.S.C. v. Cooper*, 103 F.3d 472, 477-78 (6th Cir. 1996)

(affirming disgorgement of retainer and noting "the courts have denied all fees" where an

attorney failed to disclose his fee arrangement pursuant to Section 329 and Fed. R. Bankr. P. 2016); *Investment Bankers*, 4 F.3d at 1565 (stating that "an attorney who fails to comply with the requirements of § 329 forfeits any right to receive compensation for services"); *Smitty's Truck Stop*, 210 B.R. at 848 (failure to disclose justifies denial of all compensation).

In a typical bankruptcy case in which debtor's counsel had failed to comply with the mandates of §§ 329, 526-28, Fed. R. Bankr. P. 2016 and 2017, the case law cited above would provide a solid foundation for the Court to disgorge all fees paid and deny all future compensation as a sanction. This is not a typical bankruptcy case; this is a miscellaneous proceeding subsuming 2,259 cases filed over a five year time period. A general concept of sanction normally seen in a singular case would prove punitive in application as against a myriad of cases. A civil sanction is remedial in nature and intended to enforce compliance. *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S. Ct. 497, 499, 93 L. Ed. 599 (1949). Therefore, the Court must weigh the offense against the integrity of the system, and render a civil penalty sufficient to deter future non-compliance by the Firm and others, while not being so burdensome as to become punitive in nature.

A strong mitigating factor that this Court weighs in favor of the Firm is that without knowledge of the ongoing investigation, the Firm approached the United States Trustee to raise with him the underlying discrepancies which were ultimately demonstrated through this miscellaneous proceeding. This self-reporting is laudatory for the Firm and should present a clear message to the practicing bar. The legal community is a self-regulatory community. Although the adage that 'no good deed goes unpunished' appears true in this proceeding, the sanctions entered herein would likely have been much greater without the Firm's self-report.

A second mitigating factor weighed by this Court in favor of the Firm is the fact that the Firm was forthright with these matters, affording this Court and the United States Trustee with its full cooperation.  The Firm conducted a thorough and exhaustive audit of its own records, books, and compensation receipts.  By preparing and providing these audit reports, the Firm streamlined the discovery and evidentiary hurdles which would have been evident in reviewing 2,259 individual cases.

A third mitigating factor in the Firm's favor  is that the Firm did not seek or collect the maximum compensation available to an attorney under the No-Look Order in numerous cases. Even when the Miscellaneous Fee is factored in to the total compensation, the Firm did not collect the maximum compensation in those cases.  Although this does not absolve the Firm of its non-disclosures, it is a factor this Court weighs in determining the amount of civil penalty and sanction.

Additional mitigating factors considered by this Court are: (1) the Firm has already refunded post-petition compensation to the clients in those three Chapter 13 cases in which the Firm impermissibly sought and collected post-petition compensation for amending Chapter 13 plans; (2) the Firm is agreeing to the refund of the undisclosed Miscellaneous Fees charged in Chapter 13 cases; and (3) the Firm agrees that this Memorandum Opinion and Order should be published as an instructive and remedial means to the practicing bar.  The publication of this Memorandum Opinion and Order provides its own public reprimand of the Firm's actions, inactions, and omissions.[11]

---

[11] Although a copy of this Memorandum Opinion and Order will also be provided to the Florida State Bar, such shall not constitute a complaint or referral of the Firm or any past or present attorney practicing with the Firm.  The copy of this Memorandum Opinion and Order is being provided solely for notice and compliance purposes only.

Finally, the Firm conceded that the issues raised by the United States Trustee went to the central core of the integrity of the bankruptcy system. If the parties cannot rely upon the disclosures made by the officers of the court in their respective cases, then the very veracity of the debtors' disclosures, as prepared by those professionals, would always be suspect. Both the Firm and its clients failed to provide disclosures that lay bare all agreements, transactions, payments, and transfers in a full and accurate coherent, cohesive, and consistent statements that could be relied upon by this Court and the parties. The Firm should not have found itself in this predicament and caused the clients to unwittingly submit inaccurate information in their schedules. *See* 11 U.S.C. § 526(a)(1-4), 521, *see generally* 11 U.S.C. §§ 707(b)(4), 727(a)(4), and Fed. R. Bankr. P. 9011.

There are factors that are either neutral or weigh against the Firm. First, the Firm did disclose the Miscellaneous Fee to the clients in its Chapter 13 fee agreements with the clients. As mandated by § 329(a) and Fed. R. Bankr. P. 2016(b), full and complete disclosure of any and all agreements regarding compensation of fees and expenses are to be disclosed to this Court and the parties. It matters not that the client knew of the Miscellaneous Fee. To this extent, this factor is neutral. It becomes an aggravating factor when considered in light of the statutory duties both a debtor and the Firm hold to fully and accurately disclose all payments made by or on behalf of a debtor to the Firm. *See* 11 U.S.C. §§ 329, 526, and 521.

Second, there may be an argument that there is a lack of clarity with respect to certain applicable provisions of the No-Look Order and the First Day Order. This was addressed by this Court in *Whitcomb*, 2012 WL 4092519 at pp. 9-10, and not wholly adopted by this Court. Likewise, this Court's First Day Order was entered after a lengthy notice, comment time period,

and a full day evidentiary hearing was conducted *en banc*.[12]  The No-Look and First Day Orders are clear with respect to  what they provide, what is compensable, and what disclosures are required.  However, if the Firm was unclear with respect to what an order meant or how it must operate in compliance with that order, the Firm should have sought clarification of the order, rather than unilaterally deciding to commence charging clients additional and undisclosed expenses contrary to the language of both the No-Look and First Day Orders.  This admonition, though, should not be taken as an invitation to seek clarification at every turn.

The Firm is managed by an attorney certified in the consumer bankruptcy practice.  The No-Look Order and the First Day Order are both clear on what an attorney may seek and may collect, as well as what is required to be disclosed.  There is a lack of clarity in these orders regarding post-petition actual and necessary court filing fee expenses for amendments and conversions.  Again, debtors' counsel should not have found itself in this predicament.

After weighing the Firm's mitigating, neutral, and aggravating factors, this Court finds and concludes that the Firm did not exercise a willful intent to deceive or intentionally seek to circumvent the No-Look Order or First Day Order.  This Court further finds and concludes that neither the Firm nor any of its present or past attorneys committed any intentional unethical conduct with respect to the issues specifically raised in this miscellaneous proceeding.

However, the absence of willfulness does not relieve one of a violation.  The Eleventh Circuit has defined the requisite burden of proof for willfulness in terms of violation of an order in bankruptcy.  *See Jove Engineering, Inc. v. IRS (In re Jove Engineering, Inc.)*, 92 F.3d 1539,

---

[12] This was "a result of additional requirements contained in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), the passage of time, and efficiencies in the administration of chapter 13 cases created by this Court over the last several years, the Tampa Division Judges determined that it was appropriate to review their current procedures with respect to the presumptively reasonable fee for the attorneys for debtors in chapter 13 cases.  *See original* No-Look Order (8:07-mp-00002)(*en banc*).

1555 (11th Cir. 1996).  Under *Jove Engineering*, a court order is violated upon a showing that: (1) the person knew of the order; and (2) intentionally committed an act in violation of the order, regardless of whether the violator specifically intended to violate the order.  *Id*.  The Firm has been operating its Chapter 13 practice under some iteration of the No-Look Order and First Day Order since the adoption of these orders.  The Firm sought and collected from Chapter 13 debtors Miscellaneous Fees without disclosure.  Under *McComb,* 336 U.S. at 191, "it matters not with what intent the defendant did the prohibited act."

Therefore, this Court finds and concludes that it would be excessive, unjust, punitive, and unfair to order the disgorgement of all compensation received by the Firm in its 2,259 bankruptcy cases at issue.  Likewise, under the facts in this miscellaneous proceeding covering an expanse of 2,259 cases, the disgorgement of $149,040.00, which amounts to all of the undisclosed and unauthorized Miscellaneous Fee charges, would also prove to be punitive.

The Firm has agreed to refund to the Chapter 13 trustee the undisclosed funds received by the Firm in all cases which remain pending, as identified by the Parties' spreadsheet.  This amounts to $42,675.00.  These fees are to be paid in lump sum to the Chapter 13 trustee's office as additional disbursements under §1326 for the benefit of the estate creditors to the pending applicable Chapter 13 cases.[13]

These funds shall not change any payments from a debtor to the Chapter 13 trustee in his individual case but instead are to provide additional disbursements to holders of allowed unsecured claims, less any administrative fees of the Chapter 13 trustee.  Because of the single case amount of $50-$200, the judgment entered in this miscellaneous proceeding shall constitute

---

[13] The Firm shall provide a spreadsheet of the pending chapter 13 cases, delineating the case number, case name, and the amount to be paid to each case.

sufficient and adequate modification of those plans under §§ 102, 105(a), and 1329.  To the extent, if any, that there remain surplus funds, due to a case closing in the interim, the Chapter 13 trustee is directed to pay such sums to the respective debtor(s).

As additional civil penalties, sanctions, and attorney fees, the Firm shall also pay unto the United States Trustee an amount of $8,750, in accordance with  § 526-528.  Further, the Firm shall also pay to a non-profit pro bono legal services provider, as agreed to by the parties, servicing the Fort Myers Division an amount of $8,000 as civil penalties and sanctions under the Bankruptcy Code and Rules; or, at the pro bono legal services provider's option, in lieu of the $8,000 payment, the Firm shall provide a total of forty-eight (48) hours of attorney time in bankruptcy cases filed by the pro bono legal services provider.  In the pro bono cases, the debtor shall pay the associated court fees in such cases unless a fee waiver or *in forma pauperis* proceeding is available.  The Firm shall have thirty (30) days from the entry of the judgment to provide the payment by certified funds of these additional civil penalties, sanctions, and attorney fees.  Finally, the Firm shall provide *pro bono* Chapter 7 legal services in 24 individual or joint Chapter 7 cases filed in the Middle District of Florida over the next twelve (12) months, and provide proof of *pro bono* filing to the United States Trustee.  The Court finds and concludes that such disgorgement, civil penalties, sanctions, and attorney fees are warranted in this miscellaneous proceeding, provided for under the Bankruptcy Code and Rules, not so burdensome as to be punitive, deter future non-compliance, ensure the integrity of the

bankruptcy system, and maintain a fair and reasonable process for the bar.  This Court shall enter

a separate judgment in accordance with this Memorandum Opinion and Order.

It is so ordered.

**DONE** and **ORDERED** in Chambers on _____October 26_____, 2012.

_____

**BARRY S. SCHERMER**
**UNITED STATES BANKRUPTCY JUDGE**

Copies furnished to:
Respondent, U.S. Trustee, Chapter 13 Standing Trustee

The Florida Bar
Ethics Department
651 E. Jefferson Street
Tallahassee, Florida 32399-2300

Westlaw®
Lexis®